**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **MICHAEL V. BOSE,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**UNION PACIFIC RAILROAD COMPANY, a Delaware corporation;**<br><br>**Defendant.** | **8:25CV142**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on the motions to compel discovery filed by the parties. Plaintiff, Michael V. Bose, filed a Motion to Compel and for Sanctions (Filing No. 85) requesting an order compelling Defendant, Union Pacific Railroad Company ("Union Pacific"), to produce information regarding a Safety Hotline Report, produce paving project documentation, fully answer interrogatories 23 and 24, and produce a proper privilege log. Plaintiff also requests the Court (1) find Union Pacific has not engaged in discovery in good faith and has abused the legal process, and (2) sanction Union Pacific "by finding it was negligent," and that such "negligence caused Plaintiff's injury, precluding [Union Pacific] from relying on evidence untimely produced in last-minute dumps, and other appropriate remedies as determined by the Court." (Filing No. 85 at p. 1). Union Pacific has in turn filed a motion to compel (Filing No. 89), asking the Court to order Plaintiff to provide full and complete responses to its Requests for Production Nos. 6 and 13. For the following reasons, the Court will deny both motions.

## BACKGROUND

Plaintiff filed the instant action against Union Pacific under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, for personal injuries he suffered on the job as a switchman for Union Pacific. (Filing No. 1). Plaintiff alleges that on February 20, 2024, he was performing his switchman job duties alone using a Remote-Control Locomotive ("RCL") on Union Pacific's tracks in the "East Hump" of Bailey Yard in North Platte. Plaintiff's task was to split cars by pulling pins between designated cars to send them toward the hump for sorting. Plaintiff alleges that while he was performing his duties, the pin lifter mechanism failed when he was trying to release and separate railcar TBOX 64253 and a gondola car, UP 925013. Due to this

malfunction, Plaintiff alleges he was "was forced to walk along the poorly maintained path beside the railcar" and to use "reasonable force to try to release the pin." During that struggle, Plaintiff's left leg was run over by the moving equipment. Plaintiff's lower left leg was later amputated at the hospital due to the severity of the injury. (Filing No. 1 at pp. 2-3).

Because of the "significant nature" of Plaintiff's leg injury on February 20, 2024, attorneys on both sides became involved immediately; Plaintiff hired counsel the same day as his injury, and his counsel sent a letter to Union Pacific the same day regarding his intent to pursue litigation. Union Pacific's attorneys likewise became involved on the date of the incident and conducted an investigation "proceeding under the direction of legal counsel and the law/claims department." Plaintiff had his own experts and attorneys inspect the scene and equipment two days after his injury, on February 22, 2024. (Filing No. 88-9 at p. 11; Filing No. 88-16 at p. 1; Filing No. 88-16 at p. 7).

Plaintiff alleges Union Pacific violated the Safety Appliance Act, 49 U.S.C. §§ 20301-20306, and was negligent in allowing railcars to be used with a defective coupling mechanism, failing to provide a safe work environment and safe and proper equipment, failing to warn about unsafe conditions, among other acts of negligence. (Filing No. 1 at pp. 3-4).

The parties both served initial mandatory disclosures on April 22, 2025. (Filing No. 17; Filing No. 18). Plaintiff served his first set of written discovery requests upon Union Pacific on April 4, 2025. (Filing No. 10). On May 9, 2025, Union Pacific served its responses to written discovery, which included objections to all interrogatories and all but three Requests for Production of Documents, and no officer or agent signed its interrogatory responses as required under Rule 33 of the Federal Rules of Civil Procedure. (Filing No. 86 at pp. 2-3). Union Pacific served written discovery requests upon Plaintiff on May 28, 2025. (Filing No. 20). Union Pacific asserts Plaintiff's initial responses served on June 27, 2025, "relied heavily on boilerplate objections and generalized references to 'all documents produced.'" (Filing No. 89 at p. 1).

In the ensuing months, counsel for the parties exchanged several emails and telephone calls regarding their various discovery issues, with differing views on which side was causing difficulties in the process. (Filing No. 86 at pp. 2-5, Filing No. 88-1 at p. 3, 18; Filing No. 122 at pp. 6-7). Counsel initially emailed the undersigned magistrate judge on September 8, 2025, requesting a telephone conference regarding their written discovery disputes. The undersigned was unconvinced counsel had conducted a meaningful meet and confer regarding their respective

discovery obligations. The undersigned therefore instructed counsel to meet and confer, and for any remaining issues for which an agreement cannot be reached, told counsel to "jointly prepare and email to chambers a joint statement listing each unresolved issue, followed by each party's position statement regarding that issue" together with a statement certifying the time and manner of the meet and confer required under NECivR 7.1(j). Counsel met and conferred by telephone on September 19, 2025. Counsel again contacted the undersigned magistrate judge on October 22, 2025, to schedule a telephone conference intervene in the discovery dispute; however, despite the Court's directive to provide a joint statement, the parties provided separate statements. Counsel for Plaintiff represents that defense counsel refused to contribute to a joint statement. (Filing No. 51; Filing No. 88-1 at p. 11).

A telephone conference on the parties' outstanding written discovery issues was held before the undersigned magistrate judge on November 6, 2025. (Filing No. 55). In advance of the conference, both parties submitted separate statements regarding their disputes together with several exhibits. (Filing No. 88-1). Plaintiff identified the following "categories of discovery failures" for the conference:

> 1. The initial failure to disclose and inexcusable delay in providing the names of the two carmen who supposedly inspected the inbound train;
> 2. Incomplete or delayed records related to the train and both of the involved railcars (including repair records from before and after the incident);
> 3. Absence of any records related to safety audits performed of the area, which are routinely performed in these types of cases;
> 4. Absence of any records concerning the paving project of the area (as referenced during the deposition of Kyle Benson on July 24, 2025); and
> 5. Names and dates for the records involving prior complaints that were actually provided. However, there may be even more records given Ali De Bruhl's testimony that no attempt was made to search for actual records of other similar complaints or injuries which may be included in other claims files and elsewhere.

(Filing No. 86 at p. 5).

During the telephonic hearing on November 6, 2025, plaintiff's counsel took issue with Union Pacific's late disclosure of additional hours of video footage from the area of Plaintiff's injury and late identification of two carmen. Plaintiff's counsel argued Union Pacific has had a pattern of late disclosures throughout this case and asserted a belief that he could not trust whether Union Pacific has disclosed everything. (Filing No. 56).[1]

---

[1] The Court is summarizing from the recorded audio file of the hearing located at Filing No. 56.

Defense counsel explained that at the outset of the case, it disclosed approximately 10 minutes of video footage from the only camera angle that showed Plaintiff's accident, beginning several minutes before the accident and ending after Plaintiff leaves the area. During Plaintiff's deposition of another employee, Union Pacific learned there may be another camera in the crew room. Defense counsel then did further review to see if he missed additional video footage. During his review, defense counsel saw the "tail end" of one of those videos showing the accident, which he missed upon his initial review of the hours of video footage produced by his client; defense counsel then disclosed that video. Defense counsel also in an "abundance of caution" produced additional video footage beginning longer before the accident from the first camera. Defense counsel asserted his belief this additional footage was "really nothing" because it just shows "people working" and does not show the accident or the rail cars alleged to be the problem. Defense counsel also found video where the heads of paramedics were visible, and disclosed that additional video. (Filing No. 56). With respect to "safety audits," defense counsel stated it produced five years of the records for what it believed was responsive to this request, but Plaintiff did not clarify what was meant by "safety audit," which could mean "a million" things. Defense counsel represented that until he received Plaintiff's counsel's pre-hearing letter, he never saw a request for pavement project records, and although he was not sure of their relevance, he would "be happy" to look for those records.

After review of the parties' pre-hearing submissions and arguments during the telephone conference on November 6, 2025, as to Plaintiff's issues with Union Pacific's discovery responses, the Court directed plaintiff's counsel to clarify/identify what records related to "routine safety audits" he was requesting Union Pacific to produce; after providing that clarification, the Court directed Union Pacific to conduct a diligent search of its records, and by December 11, 2025, supplement its written discovery responses—duly signed and verified—together with an updated privilege log as necessary. As to Union Pacific's issues with Plaintiff's discovery responses, the Court indicated Plaintiff should identify by Bates stamp the documents it believed were responsive to Union Pacific's discovery requests. (Filing No. 56 at 1:10-1:13). The Court gave the parties leave to file appropriate discovery motions if necessary after review of the supplementation. (Filing No. 55; Filing No. 56). The Court subsequently granted Union Pacific's four requests to extend the December 11, 2025, deadline, resulting in a final deadline of January 21, 2026, for

supplementation and production of a privilege log as ordered during the November 6, 2025, call. (Filing Nos. 62-74).

Following the telephone conference, in an email to defense counsel dated November 11, 2025, Plaintiff's counsel clarified his request for records related to routine safety audits as follows: "Plaintiff is requesting all records documenting safety audits, inspections, or examinations conducted by UP or at the direction of UP at the incident location for the five years prior to the incident to present." (Filing No. 88-13 at p. 1). Plaintiff's counsel stated this request would include "statutorily required track inspections" as well as Union Pacific's own "audits/inspections outside of the track inspections mandated by the FRA," the FRA safety audits, and records of an audit/inspection performed after the repaving project. (*Id.*). Plaintiff's counsel asked Union Pacific to search systems and files that could contain such information, including safety department files and databases, operations records, quality assurance files, maintenance and inspection logs, and any centralized repository where safety audit records are maintained. (*Id.*). Plaintiff also requested that Union Pacific "certify in writing" that a thorough search has been completed with a "detailed written statement" explaining who was contacted, which databases/systems were searched, the scope and date of those searches, the names and titles of individuals who conducted the search, and explanation for the absence of records. (*Id.* at pp. 1-2).

On February 17, 2026, Union Pacific made another supplemental document production with ten additional documents, including the complete Safety Hotline Report that Plaintiff asserts was originally incompletely disclosed as Bates 6756; the contract between Union Pacific and the paving company, Holland, dated April 1, 2021, with a one-page amendment signed later in 2021; and three undated photographs and incomplete screen shots related to the "Asphalt walking path for East hump pin pullers" paving project. (Filing No. 87 at p. 2; Filing No. 88-10; Filing No. 88-15). Defense counsel informed Plaintiff's counsel that with regard to the paving, "there was not a bid as it was done pursuant to a contract with Holland that they already had in place," and "provided a copy of the contract . . . along with some additional material regarding the paving in the link." After that production, defense counsel asked Plaintiff's counsel "if there is anything else you requested below, if anything, regarding paving[.]" Defense counsel also stated he would provide supplemental responses to Interrogatories 23 and 24, as well as the privilege log by February 27, 2026. (Filing No. 122-22 at pp. 1-2).

On February 27, 2026, defense counsel provided additional material on paving, which Plaintiff asserts consisted of five additional documents. (Filing No. 86 at pp. 9-10). Defense counsel noted it would provide its amended answers to Interrogatories 23 and 24, as well as an amended privilege log, on March 2, 2026. (Filing No. 122-22 at p. 1). On March 4, 2026, Defendant provided a supplemental response and objection to Plaintiff's two additional interrogatories originally served on November 12, 2025. (Filing No. 88-14). Ali DeBruhl, a Risk Manager for Union Pacific, provided signed verification of the interrogatory answers. (Filing No. 88-14 at p. 6).[2] Union Pacific also provided a Second Supplemental/Amended Privilege Log. (Filing No. 88-16).

The Court's Third Amended Case Progression Order (Filing No. 77) set March 5, 2026, as the deadline to complete discovery and March 19, 2026, as the deadline for filing motions to compel. Plaintiff has now filed the instant motion to compel and for sanctions. (Filing No. 85). Plaintiff asserts that Union Pacific "has still failed to provide the most basic information such as the engineering instructions or construction standards for the paving project," which goes to the "heart of this case: the safety of the walking area where Mr. Plaintiff lost his leg." (Filing No. 86 at pp. 10-11). Plaintiff contends that from the outset of litigation Union Pacific has "erect[ed] a brick wall of non-responsiveness" and "leverage[d] abuses of process" by "withholding responsive documents and potential witnesses until the close of discovery" and by "refusing a standing objection and individually objecting over 200 times during a single deposition to ensure interruption." (Filing No. 86 at pp. 15-16). Plaintiff requests a discovery sanction of a Court finding as a matter of law that Union Pacific was negligent and that its negligence caused Plaintiff's injury, or at a minimum, precluding Union Pacific from relying on witnesses or information provided or disclosed on or after January 21, 2026. (Filing No. 86 at p. 17). Plaintiff also asks the Court to use its inherent authority to sanction Union Pacific and its counsel as it deems necessary. (*Id.* at 18).

Aside from its request for sanctions, Plaintiff asserts Union Pacific's supplemental discovery belatedly "dump[ed]" at the close of discovery is still insufficient. Plaintiff seeks an order compelling Union Pacific to (1) produce a complete copy of Safety Hotline Report 6756; (2) produce additional documentation regarding the paving project; (3) produce a more detailed privilege log; and (4) to fully answer Interrogatory Nos. 23 and 24. (Filing No. 86 at pp. 19-22).

[2] Plaintiff took DeBruhl's deposition on August 28, 2025. (Filing No. 122-12).

Plaintiff also requests an award of attorney's fees and costs under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure.

Union Pacific also filed a motion to compel, seeking a Court order compelling Plaintiff to provide full and complete responses to Requests for Production Nos. 6 and 13. (Filing No. 89).

**DISCUSSION**

Federal Rule of Civil Procedure Rule 26 sets forth the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(1), advisory committee's notes to 2015 amendment).

Relevancy for the purposes of discovery includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). If the discovery sought appears relevant on its face, "the party resisting discovery has the burden to establish that the discovery is not relevant or is 'of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Turner v. Moen Steel Erection, Inc.*, No. 8:06CV227, 2006 WL 3392206, at *3 (D. Neb. Oct. 5, 2006) (quoting *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006)); see also *Allstate Ins. Co. v. Hewlett-Packard Co.,* No. 8:08CV39, 2010 WL 2813659, at *2 (D. Neb. July 16, 2010) ("If this relevance threshold is satisfied, the party resisting discovery bears the burden of showing its objections are valid."). If, however, the relevance of the discovery request is not readily apparent, the party requesting discovery must first show how the requested information is relevant. *CFGenome, LLC v. Streck, Inc.*, No. 4:16CV3130, 2019 WL 3969178, at *1 (D. Neb. Aug. 22, 2019).

Under Rule 26(b)(2), the court "must" limit discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2). However, "mere conclusory objections that something is overly broad, burdensome, or oppressive, is insufficient to carry the resisting party's burden—that party must make a specific showing of reasons why the particular discovery should not be had." *Bogensberger v. USAA Cas. Ins. Co.*, No. 4:21-CV-04064-KES, 2024 WL 3415892, at *5 (D. S.D. July 15, 2024). "Unless facially apparent from the request itself," the party resisting discovery "as unduly burdensome or seeking confidential information must present evidence to support those objections. Arguments in the briefing and conclusory statements in proffered evidence are not enough." *Cattle & Beef Antitrust Litig. v. JBS S.A.*, No. 8:22CV204, 2022 WL 17718553, at *7 (D. Neb. Dec. 15, 2022) (citing *Vallejo*, 903 F.3d at 743). Objections regarding undue burden "must be supported by some evidence regarding the time or expense required for compliance." *Id.* (citing *Vallejo*, 903 F.3d at 743). "[A]s long as the parties request information or documents relevant to the claims at issue in the case, and such requests are tendered in good faith and are not unduly burdensome, discovery shall proceed." *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

Federal Rule of Civil Procedure 34 provides two alternatives for a party in producing documents responsive to requests propounded under Rule 34. Fed. R. Civ. P. 34(b)(2)(E)(i). It provides that a party must either (1) "produce documents as they are kept in the usual course of business," or (2) "organize and label them to correspond to categories in the request." *Id.* "Producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34." *See Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001). "Under Rule 34(b), the responses must allow the requesting party to readily determine which documents are responsive to which request." *GP Indus., LLC v. Bachman*, No. 8:06CV50, 2007 WL 4245786, at *5 (D. Neb. Nov. 29, 2007).

"Rule 26(g) of the Federal Rules of Civil Procedure imposes on counsel and parties an affirmative duty to conduct pretrial discovery in a responsible manner." *Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 188 (N.D. Iowa 2017) (quoting *St. Paul Reins. Co., Ltd.*, 198

F.R.D. at 515 (citing Fed. R. Civ. P. 26(g), Advisory Committee Notes to 1983 Amendments). "Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name[.]" Fed. R. Civ. P. 26(g)(1). By such signing, an attorney certifies that each disclosure is "complete and correct as of the time it is made;" and that each discovery request, response, or objection is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1).

Pursuant to Rule 37, a party may move for an order compelling disclosure from another party when that party has failed to answer interrogatories under Rule 33 or fails to produce documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii)(iv). An evasive or incomplete answer or response "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "When adjudicating a motion to compel, courts consider 'the importance of the information, issues of access, and the balance between the burden of production and expense and the benefit of the information.'" *R. L. Mlazgar Assocs., Inc. v. Focal Point L.L.C.*, 2024 WL 4751269, at *3 (D. Minn. Nov. 12, 2024).

Because discovery rules should " 'be construed to secure the just, speedy, and inexpensive determination of every action' . . . judges should not hesitate to exercise appropriate control over the discovery process." *Blackmore v. Union Pac. R.R. Co.*, No. 8:21CV318, 2022 WL 3718115, at *5 (D. Neb. Aug. 29, 2022) (quoting *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999)). The court has broad discretion to limit discovery and decide discovery motions. *Wilbur-Ellis Co. v. Gompert*, No. 8:21CV340, 2023 WL 6038022, at *1 (D. Neb. Sept. 15, 2023) (citing *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993)).

## I. Union Pacific's Motion to Compel

Union Pacific seeks a Court order compelling Plaintiff "to provide full and complete responses to Requests for Production Nos. 6 and 13." (Filing No. 89). Generally, Union Pacific

contends Plaintiff has lodged "boilerplate" objections and simply provided generalized references to all documents produced in this case instead of identifying the documents specifically responsive to the requests. (Filing No. 110 at pp. 1-2). Plaintiff accuses Union Pacific of filing a "desultory motion to compel" to "muddy the waters on Plaintiff's motion," and asserts he has responded fully and in good faith to all discovery requests. (Filing No. 107 at p. 1).

***a. Request for Production No. 6***

Union Pacific's Request for Production No. 6 ("RFP 6") seeks production of "all documents that support the allegations, claims, or contentions in your complaint, including the contentions in paragraph 15 and its subparts." (Filing No. 89-1 at p. 2). Paragraph 15 of Plaintiff's Complaint alleges his injuries and damages were caused by Union Pacific's breach of duty and violation of the FELA when it failed to: provide a reasonably safe place to work; provide safe and proper equipment; properly inspect, maintain, and repair its equipment; adopt and enforce safe rules and methods; instruct; warn about unsafe condition of equipment and use of equipment and tools; and "other acts of negligence as shown in discovery of this case." (Filing No. 1 at p. 4).

Plaintiff responded to RFP 6, "See documents produced by both parties." (Filing No. 89-1 at p. 2). Plaintiff's second supplemental response dated December 12, 2025, states, "Plaintiff's response is appropriate without Bates stamps, because the global request cannot be limited to specific documents. The appropriate answer to this global request is all the documents produced by both parties as Plaintiff initially responded. In the spirit of cooperation, as of this filing Plaintiff has served bates 0001 through 2157." (Filing No. 89-2 at p. 3).

Plaintiff states RFP 6 is an "overly broad, global request" that in essence is a request that restates the requirement to produce initial disclosures under Rule 26(a)(1). (Filing No. 107 at p. 2). Plaintiff asserts he has "produced all reasonably responsive documents in his initial disclosures and his supplemental productions" and will supplement such production as required under Rule 26(a) if additional documents are discovered. Plaintiff argues that to the extent Union Pacific is attempting to ask Plaintiff's counsel to identify which documents they believe are most important, that is asking for disclosure of counsel's mental impressions. (Filing No. 107 at pp. 2-3).

Neither party points out that Plaintiff did not object to RFP 6. Instead, he first responded, "See documents produced by both parties," (Filing No. 89-1 at p. 2), and then supplemented his response to identify that all documents produced in this case are responsive to the request, (Filing No. 89-2 at p. 3). Objections to written discovery requests must be stated with specificity, and

"[a]ny ground not stated in a timely objection is waived unless the court for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); *see also* Fed. R. Civ. P. 34(b)(2)(B) (requiring objections to requests for production be stated with specificity in timely responses) *and* Fed. R. Civ. P. 34 advisory committee's note, 1970 Amend. ("The procedure provided in Rule 34 is essentially the same as than in Rule 33."). Plaintiff did not object to this request, and therefore he waived objections.

On the other hand, Union Pacific's request for "all documents that support the allegations, claims, or contentions in your complaint" is patently overbroad on its face.[3] *See, e.g., Cup O' Dirt LLC v. Badlands Airtime, LLC*, No. 4:19-CV-04031-KES, 2021 WL 680173, at *21 (D.S.D. Feb. 22, 2021) (finding the defendants' requests for "all Documents and Things that . . . support any allegation contained in the Amended Complaint" were overbroad on their face and did not comply with Rule 34's particularity requirement; such requests were essentially "produce everything that falls under Rule 26."). Rule 34 requires that a request for production must describe the documents requested with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A); *St. Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000). A document request is typically overly broad on its face if it uses an "omnibus term such as relating to, pertaining to, or concerning" unless it "modifies a sufficiently specific type of information, document, or event[.]" *Brown Bear v. Cuna Mut. Group*, 266 F.R.D 310, 320 (D.S.D. 2009) (internal quotations omitted) (quoting *U.S. Fire Ins. Co v. Bunge N. Am., Inc.*, 2007 WL 1531846, at *7 (D. Kan. May 25, 2007)).

Union Pacific's RFP 6 does not describe with reasonable particularity the requested category of items sought; Union Pacific's request is essentially asking Plaintiff to produce all documents supporting his claims, which Rule 26(a)(1)(A)(ii) already requires Plaintiff to do. See Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring a party to, "without awaiting a discovery request, provide to the other parties . . . documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims[.]"). Moreover, Union Pacific is seeking to compel Plaintiff to *identify* by Bates number, not produce, documents that support his claims and contentions in paragraph 15 of Plaintiff's complaint. (Filing No. 89 at pp. 2-3). Rule 34 provides that a party may serve a request "to produce" documents or

[3] As written, RFP 6 does not specify it is limited to paragraph 15; instead, it asks for "all documents" supporting Plaintiff's claims, *including* paragraph 15. Nevertheless, even limiting the request to paragraph 15 would essentially be a request for Plaintiff to produce all documents supporting his claims because paragraph 15 is Plaintiff's claim that Union Pacific is liable for his injuries under FELA. (Filing No. 1 at p. 4).

electronically stored information within the scope of Rule 26(b) and "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Rule 34 provides two alternatives for the producing party: the producing party must either (1) "produce documents as they are kept in the usual course of business," or (2) "organize and label them to correspond to categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). "Under Rule 34(b), the responses must allow the requesting party to readily determine which documents are responsive to which request." *GP Indus., LLC v. Bachman*, No. 8:06CV50, 2007 WL 4245786, at *5 (D. Neb. Nov. 29, 2007).

It is true that during the discovery dispute conference the Court indicated that the plaintiff should identify produced documents by Bates stamp so the defendant could determine which documents were responsive to Union Pacific's requests for production. *See* Filing Nos. 55-56. That direction was derived from case law within this district suggesting that identification by Bates stamp is one way a producing party may comply with its obligations under Rule 34. See *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 608-11 (D. Neb. 2001) (finding production of "large amounts of documents in no apparent order d[id] not comply with a party's obligation under Rule 34," because "[t]he documents were not organized by date, subject matter or in any other way" and the responding party "provided no identification by Bates stamp number of the documents responsive to plaintiffs' request."). However, after further review of the request at issue, the Court finds it is so broad that Plaintiff cannot be reasonably required to respond to it. And while the Court does not condone Plaintiff's response that "The appropriate answer to this global request is all the documents produced by both parties as Plaintiff initially responded," as a proper response to a discovery request, Union Pacific does not assert a belief Plaintiff has actually withheld any responsive documents or failed to comply with his obligations under Rule 26(a)(1)(A)(ii). Under the circumstances, the Court will not require Plaintiff to further respond to the facially overbroad RFP 6 that asks Plaintiff to produce "all documents" supporting his claims in his complaint. See *Wilbur-Ellis Co.*, No. 8:21CV340, 2023 WL 6038022, at *1 (stating the court has broad discretion to limit discovery and decide discovery motions).

***b. Request for Production No. 13***

Union Pacific also seeks to compel further response to Request for Production No. 13 ("RFP 13"), which requests production of "correspondence, communications, or material including electronic email and text messages related to the incident or your conditions, the subject matter of this lawsuit, or your alleged injuries and damages which were sent or received by you

between the time of the accident and the time of trial in this matter," excluding "communications between Plaintiff's counsel and Plaintiff after his counsel was retained." Plaintiff objected to this request "as vague as to 'material' and 'related to' and unduly burdensome as to time limitations." (Filing No. 89-1 at pp. 3-4). Plaintiff further objected because the information sought is not proportional to the needs of the case and seeks "private information not put at issue by the Plaintiff in this litigation." Plaintiff continued, "Without waiving such objections, see all documents produced in this matter." (*Id.* at p. 4). Plaintiff's second supplemental response maintains his objections "because this global request cannot be limited to specific documents as it is written," and "[t]he appropriate answer to this global request is all documents produced in this matter as Plaintiff initially responded[.]" Plaintiff then states Union Pacific provided a "recent limit to this request to emails and text messages," and "after reasonabl[e] inquiry and pursuant to Fed. R. Civ. P. 26(e)," he "does not have any responsive documents in his possession, custody, or control" responsive to the request. Plaintiff concludes, "In the spirit of cooperation, as of this filing Plaintiff has produced Plaintiff's Bates 0001 through 2157." (Filing No. 89-2 at p. 5).

Union Pacific asserts Plaintiff's "initial response asserted boilerplate objections," and his supplemental response remains insufficient because he has not produced a privilege log. Union Pacific contends "the objections should be overruled and Plaintiff should provide any documents being withheld because there is no basis for the objection and no indication about what is being withheld." (Filing No. 89 at p. 3; Filing No. 110 at p. 2). Plaintiff maintains his objections because the request contained no time limitations and was so broadly worded that could be read to encompass any "communications"—in other words, anything meant to convey information from person to person—that has anything to do with the case. (Filing No. 107 at p. 3).

The Court finds that this request is overbroad as it is unlimited in time and scope; the request is essentially asking for any communication Plaintiff ever received or sent about anything related to this lawsuit. Moreover, in Plaintiff's second supplemental response, he responds that Union Pacific limited its request to text messages, and "after reasonabl[e] inquiry," he does not have any responsive documents in his possession, custody, or control responsive to the request. Accordingly, the Court will not require Plaintiff to further respond to this request.

For the foregoing reasons, Union Pacific's motion to compel is denied.

## II. Plaintiff's Motion to Compel and for Sanctions

### *a. Plaintiff's Motion to Compel*

Plaintiff argues Union Pacific's supplemental discovery belatedly "dump[ed]" at the close of discovery is insufficient. The Court will address each item below.

*i. Safety Hotline Report, Bates No. 6756*

Plaintiff asserts the Safety Hotline Report produced by Union Pacific at Bates No. 6756 initially was "missing dates, names, and narratives for what was done to resolve the safety issues." (Filing No. 86 at p. 8). Plaintiff speculates, "This is likely because such information in the report was omitted, removed, or concealed," and safety hotline reports provided by Union Pacific in other cases typically include fields such as "Primary Owner," "Primary Owner Date," "Resolution Date," "SHL Issue Resolution," "Secondary Owner" and "Third Owner" information. (Filing No. 86 at pp. 19-20). Plaintiff acknowledges that on February 17, 2026, Union Pacific supplemented its production to include what "appears to be the complete Safety Hotline Report that was originally incompletely disclosed as Bates 6756," and "the specific Safety Hotline Report has seemingly been provided at this point" although "there has been no indication that discovery is complete[.]" (Filing No. 86 at pp. 9, 20). Union Pacific responds it did not conceal information and there is nothing further to provide on the safety hotline report; Plaintiff is merely speculating that Union Pacific "is withholding additional information when it is not." (Filing No. 122 at p. 19).

Union Pacific represents it is not withholding anything responsive to this request, and Plaintiff acknowledges the Safety Hotline Report has been provided. There is no indication that there is anything further to compel. Accordingly, the Court will deny Plaintiff's request to compel as to this document.

*ii. Paving project documentation*

Plaintiff next asserts Union Pacific's "paving project documentation" is incomplete. Plaintiff asserts Union Pacific "has provided some documentation, but no emails pertaining to the scope of the work; no asphalt contractor bids detailing the work; no contractor estimates detailing the work; no plans for the scope of work; and no correspondence between [Union Pacific] and the paving company, which apparently did some type of work," and that Kyle Benson's testimony made reference to paving work in the area. *Id.* Plaintiff asserts that the first time he learned there

was a 2022 paving project was during the deposition of Kyle Benson on July 24, 2025. (Filing No. 129 at p. 3).

Union Pacific responds Plaintiff never made a discovery request for "pavement project records." (Filing No. 122 at p. 19). Union Pacific represents that the first time Plaintiff clarified he was requesting pavement project records was just prior to the November 6, 2025, discovery dispute call; none of Plaintiff's discovery requests ask for pavement records. (Filing No. 122 at p. 11); *see also* (Filing No. 56) (defense counsel stating, during the telephone conference, ". . . the first time they ever bring up this paving project was literally in this statement. . . there's not one request where they asked for paving project of the area. I don't see this in the Golden rule letter they sent. . . . I don't believe it's necessarily relevant, but I would be more than happy to look for that[.]"). In his reply brief, Plaintiff asserts paving project documentation is responsive to his request asking for production of "All documents that constitute, reflect, describe, summarize, or refer to any inspection, repair, re-enactment and/or recreation conducted by Defendant of any scene, premises, equipment, or of any condition, occurrence or situation made the basis of this lawsuit." (Filing No. 129 at p. 2; Filing No. 88-7 at p. 7).

In Plaintiff's counsel's email to defense counsel dated November 11, 2025, with respect to paving he clarifies, "there should be records of an audit/inspection performed after the repaving project (of which you still have not provided us documentation). Certainly, UP would have conducted an audit/inspection after the repaving project to make sure the job was done right and it met UP's and general safety standards." (Filing No. 88-1 at p. 1). After such clarification, Union Pacific conducted a search for records concerning the 2022 pavement project and provided records to Plaintiff's counsel in its supplementation following the November 6, 2025, telephone conference. (Filing No. 122 at pp. 19-20). Following that initial supplementation, on February 12, 2026, Plaintiff's counsel further requested "other documents typically associated with such a project such as emails, bids, communications with the contractor, etc." (Filing No. 122-22 at p. 2). On February 17, 2026, Union Pacific's counsel responded, "there was not a bid as it was done pursuant to a contract with Holland that they already had in place," but provided a copy of the contract and "additional material regarding the paving," and asked if Plaintiff's counsel "if there is anything else you requested . . . regarding paving" and if so, he would look for and produce any additional material before February 27, 2026. (Filing No. 122-22 at pp. 1-2). On February 27, 2026, defense counsel supplemented additional material on the paving. (Filing No. 122-22 at p.

1). Plaintiff now asserts in his motion to compel that Union Pacific "has still failed to provide the most basic information such as the engineering instructions or construction standards for the paving project." (Filing No. 86 at p. 10).

After review of the discovery request at issue, Union Pacific's responses, counsel's correspondence, the audio file of the November 2025 hearing on the dispute between the parties, the Court finds Plaintiff's motion to compel on this issue should be denied. Plaintiff's request for "All documents that constitute, reflect, describe, summarize, or refer to any inspection, repair, re-enactment and/or recreation conducted by Defendant of any scene, premises, equipment, or of any condition, occurrence or situation made the basis of this lawsuit" is such a broad request without any time limitation or specificity that the Court cannot fault Union Pacific for not immediately recognizing Plaintiff was requesting production of "pavement project" records for a project that took place two years prior to Plaintiff's injury, and that such request also included "emails, bids, communications with the contractor, etc." and later, "engineering instructions or construction standards." The record establishes that Plaintiff's counsel did not communicate to Union Pacific that this request encompassed the 2022 "pavement project" records until just before the Court held its November 2025 telephone conference on discovery issues; upon learning Plaintiff was seeking this category of documents, Union Pacific's counsel did not stonewall or refuse to produce documents related to paving, and proceeded to search for and produce "pavement project" records to Plaintiff's satisfaction. (Filing No. 122-22).

Plaintiff counters that Union Pacific should have known that this discovery request encompassed paving records because "The condition and level of the asphalt have always been known key issues in this case." (Filing No. 129 at p. 3). If that is so, it begs the question why Plaintiff did not specifically ask for documentation regarding pavement, paving projects, or the condition and level of the asphalt. See Fed. R. Civ. P. 34(b)(1)(A) (requiring requests for production to describe the documents requested with "reasonable particularity."); *see also Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 5087362, at *5 (D. Minn. Jan. 5, 2021) ("The Court notes that those interrogatory requests are very broad and invite very broad responses. The Court also notes that poorly drafted interrogatories beget poorly drafted responses."). Plaintiff has also created somewhat of a moving target for both opposing counsel and the Court as to what exactly he has received or is asking to receive in response to this RFP. For example, in his brief in support of his motion to compel Plaintiff still asserts Union

Pacific has provided "no asphalt contractor bids detailing the work," despite being advised by defense counsel in February 2026 that "there was not a bid as it was done pursuant to a contract with Holland that they already had in place," and provided that contract. (Filing No. 122-22 at pp. 1-2). Union Pacific has provided Plaintiff with the pavement project contract documents, emails regarding the pavement project, invoicing information, and photographs at UP Plaintiff 14326-14336 and UP 14501-14539. The Court will deny Plaintiff's motion to compel anything further.

*iii. Interrogatory Nos. 23 and 24*

Following the November 6, 2025, discovery dispute conference, Plaintiff served Interrogatory Nos. 23 and 24 upon Union Pacific. (Filing No. 86 at p. 6). Interrogatory No. 23 asks Union Pacific to:

> Describe in detail the steps Defendant took to conduct a diligent search for records, documents, and answers to respond to Plaintiff's written discovery requests as ordered by the Court on November 6, 2025 [Dkt 55]. Defendant's detailed description should include the identity of each person who conducted any search or investigation on behalf of Defendant for responsive information and/or documents, their title and role, the specific discovery requests they searched for, when they conducted each search, the scope of their search, and the results of their search. This also requires identification of any communication (written or verbal) of instructions, search protocols, memoranda, strategies or directives regarding how to conduct the search as well as any limitations, obstacles, or other factors that affected the scope or thoroughness of the search. Furthermore, the detailed description shall include the identification of each person consulted for information and/or documents, identifying the person by name, title and role, the date of each consultation, the specific information or records requested from the person, the method of consultation (in-person, telephone, email, etc.), the complete substance of the response, and any follow-up inquiries made. The detailed description shall include the identity of each database, software system, record-keeping system, file location, or other source searched, including: a description of what each system contains; the specific search terms, parameters, or methodology used to search each system; when each system was searched; who conducted each search; the results of each search; and how the results were reviewed for responsiveness. Describe any limitations, obstacles, or other factors that affected the scope or thoroughness of the search.

(Filing No. 88-12 at p. 2). Union Pacific objected to this interrogatory because Plaintiff has exceeded the number of allowable interrogatories when including subparts; the request is overbroad in scope and encompasses facially irrelevant information; it is not proportional to the needs of the case; it is unduly burdensome and is cumulative of information already acquired

through deposition; the request seeks private employment file information of non-parties that is not subject to disclosure; and is privileged work product or attorney-client privilege. (*Id.*). In its supplemental answer, subject to those objections, Union Pacific answered:

> [I]n house legal/claims team, with the assistance of defense counsel, have coordinated a review of information gathered during Defendant's investigation, coordinated multiple email searches, contacted investigating mangers, and individuals with access to the records produced and information pertinent to the discovery responses, coordinated searches for information related to the east hump walking conditions including the pavement, coordinated searches related to safety audits, coordinated searches for documents related to the railcars and equipment involved, reviewed video gathered and produced in connection with its investigation in this matter, and reviewed materials gathered and produced to Plaintiff in connection with the discovery requests, as well as the discovery requests themselves[.]"

(Filing No. 88-14 at p. 3).

Interrogatory No. 24 asks Union Pacific to:

> Describe the steps and actions taken by the signatories to Defendant's responses (including any supplement) to Plaintiff's interrogatory requests in this case to verify the completeness and accuracy of the information and search results before discovery responses were signed, including who performed such verification and when. The description shall include the identification of each person consulted for information and/or documents, identifying the person by name, title and role, the date of each consultation, the specific information or records requested from the person, the method of consultation (in-person, telephone, email, etc.), the complete substance of the response, and any follow-up inquiries made. The detailed description shall include the identity of each database, software system, record-keeping system, file location, or other source searched, including: a description of what each system contains; the specific search terms, parameters, or methodology used to search each system; when each system was searched; who conducted each search; the results of each search; and how the results were reviewed for responsiveness.

(Filing No. 88-12 at p. 3). Union Pacific asserted the same objections as it did to Interrogatory No. 23. (*Id.*).

In its supplemental answer, subject to the objections, Union Pacific answered:

> [T]the individual signing responses to interrogatories on behalf of Defendant participated with Defendant's in house legal/claims team, as well as defense counsel, in coordinating a review of information gathered during Defendant's investigation, is aware of email searches conducted, assisted in contacting investigating managers, and individuals with access to the records produced and

> information pertinent to the discovery responses, is aware of searches for information related to the east hump walking conditions including the pavement, is aware of searches related to safety audits, is aware of searches for documents related to the railcars and equipment involved, is aware of the video gathered and produced in connection with Defendant's investigation in this matter , and reviewed materials gathered and produced to Plaintiff in connection with the discovery requests, as well as the discovery requests themselves.

(Filing No. 88-14 at p. 4).

Plaintiff has moved the Court to compel Union Pacific to answer the above interrogatories. Plaintiff contends Union Pacific "merely offered a blanket boilerplate objection" followed by a "inadequate general response." (Filing No. 86 at pp. 21-22). Plaintiff asserts Union Pacific "did not conduct a diligent search for records as evidenced by the discovery provided and the testimony of De Bruhl" and "continues to provide incomplete discovery." (*Id.* at p. 22).

Union Pacific maintains its objections because Plaintiff has "far exceeded the number of allowing interrogatories (25) when including 'subparts.'" Union Pacific asserts these interrogatories exceed the scope of permissible discovery and are not proportional to the needs of the case. Finally, Union Pacific states Plaintiff has already deposed Ali De Bruhl, who testified regarding Union Pacific's internal search processes. (Filing No. 122 at p. 20; Filing No. 122-12 at pp. 10-11, 16-17, 19-21).

The Court will not compel Union Pacific to further answer Interrogatory Nos. 23 or 24. First, Plaintiff already served 25-interrogatories when including discrete subparts, and was not given leave to exceed that amount. "[A] party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). This district recently amended its local rule regarding determining the number of interrogatories:

> In determining the number of interrogatories, including subquestions, each inquiry seeking information on separate and discrete subjects is counted as a separate interrogatory. Subparts are counted as one interrogatory only if they are logically or factually subsumed within and necessarily related to the primary question. Conversely, subparts introducing separate and distinct lines of inquiry are counted as additional interrogatories, regardless of their designation or how they are labeled.
>
> By way of example, a question asking for the time, place, persons present, and contents of a particular communication may be treated as a single interrogatory because those subparts (time, place, persons present, and contents) are related and depend upon the primary question (a particular communication). An interrogatory asking for the identity of witnesses, followed by subparts asking for each witness's

> opinions, supporting facts, and bases for those opinions, introduces distinct lines of inquiry and may be treated as multiple interrogatories.

NECivR 33.1(d)(1).

Review of Plaintiff's Interrogatory Nos. 1-22, (Filing No. 88-8 at pp. 1-15), reflect that several of them include multiple subquestions. For example, Interrogatory No. 16 asks Union Pacific to "State in detail all facts supporting each and every affirmative defense asserted by Defendant and identify all witnesses and documents that support each affirmative defense. State in detail the knowledge believed to be known by each witness." (Filing No. 88-8 at p. 9). Union Pacific raises at least eight different affirmative defenses in its Answer. Thus, this one interrogatory alone is at a minimum eight questions. (Filing No. 6 at pp. 3-5). Interrogatory No. 19 asks Union Pacific to "Identify each person participating in Defendant's investigation of this incident, any document created by that person in relationship to such investigation, and state in detail the knowledge and information possessed by each person," which is three separate questions. (Filing No. 88-8 at p. 10); *see* NECivR 33.1(a)(1) ("An interrogatory asking for the identity of witnesses, followed by subparts asking for each witness's opinions, supporting facts, and bases for those opinions, introduces distinct lines of inquiry and may be treated as multiple interrogatories."). Interrogatory Nos. 23 and 24 each contain multiple separate and discrete subparts even though they are only numbered as two interrogatories, and thus Plaintiff has exceeded 25 interrogatories.

Aside from the above issue, the Court finds these interrogatories seeking "discovery about discovery" are not appropriate under the circumstances, are cumulative of other discovery, and are not proportional to the needs of the case. *See Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 20-CV-609 (NEB/LIB), 2021 WL 5087362, at *11 (D. Minn. Jan. 5, 2021) (quoting *Gross v. Chapman*, No. 19 C 2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (alterations in original) ("While most courts acknowledge that 'discovery about discovery' can be appropriate under certain circumstances, those circumstances are limited to times when one party's discovery compliance has reasonably been drawn into question, [or] that there is 'an adequate factual basis' for an inquiry."); Fed. R. Civ. P. 26(b)(1) (requiring court to consider the proportionality of discovery, including "the importance of the discovery in resolving the issues"). Plaintiff continues to accuse Union Pacific of providing incomplete discovery and failing to participate in discovery in good faith. (Filing No. 86 at pp. 21-22). The Court has reviewed the parties' various

submissions and took note of their arguments during the discovery dispute conference, and does not find counsel has acted in bad faith. While both sides have engaged in some level of gamesmanship during discovery, part of the issue with Union Pacific's discovery responses were a product of Plaintiff's overbroad requests or requests made without requisite specificity Rule 34 requires. See discussion *supra*; *see also Speed RMG Partners*, 2021 WL 5087362, at *5. Plaintiff deposed Ali De Bruhl, and had an opportunity to inquire about Union Pacific's discovery collection process. (Filing No. 122-12). Under the circumstances, the Court will not compel Union Pacific to further answer Interrogatory Nos. 23 and 24. *See* Fed. R. Civ. P. 26(b) (providing the court should limit discovery that is unreasonably cumulative or duplicative or outside the scope of Rule 26(b)(1)).

*iv. Union Pacific's privilege log*

Finally, Plaintiff takes issue with Union Pacific's amended privilege log, (Filing No. 88-16), arguing it "does not provide Plaintiff with enough detail to determine whether the material may actually be privileged as required by Fed. R. Civ. P. 26(b)(5)(A)." (Filing No. 86 at p. 22). Plaintiff maintains the privilege log "does not identify any authors, any specific recipients, their job titles or capacities, or even the general subject matter of each communication" and "offers only date ranges and generic phrases such as "communications made . . . regarding investigation in anticipation of litigation" and the amended log only provides an introductory paragraph that does not provide clarity. Plaintiff asks the Court to compel production of the withheld documents, or at minimum, order *in camera* review of the documents. (Filing No. 86 at p. 22).

Union Pacific responds its amended privilege log satisfies the requirements of Rule 26(b)(5)(A), and it has properly withheld the documents on privilege grounds because litigation was anticipated immediately, as Plaintiff hired counsel as early as when he was in the ambulance on the day he was injured. (Filing No. 122 at p. 21; Filing No. 122-4 at p. 36).

When a party withholds otherwise discoverable information on the grounds it is privileged or subject to protection as trial-preparation material, the party must:

> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Although Rule 26(b)(5) does not specify what information must be included in a privilege log, courts have generally held a party's privilege log "should set forth specific facts which if taken as true establish the elements of the privilege for each document for which the privilege is claimed." *Taber v. Ford Motor Co.*, No. 16-00162-CV-W-SWH, 2017 WL 4391779, at *4 (W.D. Mo. Sept. 29, 2017). A privilege log, even if it is not detailed, that "identifies each document withheld and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter" is sufficient to meet this burden. *Byrd v. U.S. Silica Co.*, No. 4:22-CV-875-SPM, 2024 WL 6881526, at *9 (E.D. Mo. June 21, 2024);

Union Pacific's Second Supplemental/Amended Privilege Log (Filing No. 88-16) explains the basis of its claimed privileges. Because of the "significant nature" of Plaintiff's leg injury on February 20, 2024, attorneys on both sides became involved immediately; Plaintiff hired counsel the same day as his injury, and his counsel sent a letter to Union Pacific the same day regarding his intent to pursue litigation. Union Pacific's attorneys likewise became involved on the date of the incident and subsequent investigation "proceeding under the direction of legal counsel and the law/claims department." Plaintiff had his own experts and attorneys inspect the scene and equipment two days later, on February 22, 2024. Thus, the Court agrees with Union Pacific's assertion that litigation was anticipated by both sides immediately. (Filing No. 88-16 at p. 1; Filing No. 88-16 at p. 7).

Union Pacific lists three categories of documents withheld on the basis of privilege. First, Union Pacific has withheld 181 photographs "of the scene, equipment, and locomotive taken by defense consulting experts from ESI on or about February 22, 2024[,] made at the direction of Union Pacific's legal department and attorneys in anticipation of litigation and after Plaintiff had already hired his attorneys" on the basis of work product privilege. (Filing No. 88-16 at p. 1). Relatedly, Union Pacific also withheld six "[v]ideos of the scene, equipment, and equipment operation taken by defense consulting experts from ESI on or about February 22, 2024[,] made at the direction of Union Pacific's legal department and attorneys[.]" (Filing No. 88-16 at p. 2). Union Pacific also lists 23 "communications" "made under the direction of Union Pacific's attorneys Torry Garland, Gina Rossi, Knight Mackay Morrow and members of the Union Pacific legal/claims department including Cathy Price, Matt Starostka, and Ali DeBruhl containing strategy, mental impressions, and thought processes, as well as communications made by/between

James Orr of the FRA and Union Pacific as part of an active investigation, under 49 USC 20903, and under the direction of Union Pacific's legal department on or after February 20, 2024[.]" Each of these communications are withheld on the basis of work product and/or attorney client privilege. (Filing No. 88-16 at pp. 2-4).

The Court finds Union Pacific's second supplemental/amended privilege log complies with Fed. R. Civ. P. 26(b)(5). Union Pacific identifies it withheld 181 photographs and six videos of the scene taken by defense consulting experts at the direction of Union Pacific's legal department and attorneys two days after Plaintiff's injury. The videos and photographs were taken "of the scene, equipment, and locomotive" involved in Plaintiff's injury. Litigation was clearly anticipated at that time, as Plaintiff had already retained counsel and sent a demand letter. Thus, Union Pacific's privilege log sets forth adequate information to ascertain these documents were properly withheld on the basis of work product privilege. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)").

The amended log also identifies 23 "communications," the dates the communications were made, the attorneys and members of the Union Pacific's legal department, as well as the dates of the communications and individuals directing and involved in the communications, including Union Pacific's attorneys and members of its legal and claims departments. Union Pacific's bare minimum description of the content of each withheld communication leaves something to be desired; however, given the communications all were made "by or under the direction" of Union Pacific's attorneys regarding the investigation made on or shortly after Plaintiff's injury, or by or between James Orr of the FRA and Union Pacific as part of an investigation under 49 U.S.C. § 20903, the Court finds Union Pacific has provided enough information to determine the communications were properly withheld on privilege grounds. See Fed. R. Civ. P. 26(b)(5)(A) (requiring only that a party claiming privilege "describe the nature of the . . . communications . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (citing *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) ("The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating

the rendering of legal services to the client."). Accordingly, the Court denies Plaintiff's Motion to Compel.

***b.* Plaintiff's Motion for Sanctions**

In Plaintiff's motion, he primarily seeks "significant sanctions" against Union Pacific for its discovery abuses, requesting that the Court find "as a matter of law that [Union Pacific] was negligent and that its negligence caused Plaintiff's injury[.]" (Filing No. 86 at p. 17). Plaintiff cites three reasons why severe sanctions are justified. First, Plaintiff contends Union Pacific has "abused the process from the outset of litigation "by erecting a brick wall of non-responsiveness" to routine discovery requests. Plaintiff also cites Union Pacific's "withholding responsive documents and potential witnesses until the close of discovery," and "refusing a standing objection and individually objecting over 200 times during a single deposition[.]" (Filing No. 86 at pp. 15-16). Plaintiff asserts "[Union Pacific] and its lawyers have engaged in unjustifiable heel-digging, obfuscation, delay, evasion, omission, and refusal," and such delays and abuse of the discovery process "have caused Plaintiff to suffer significant prejudice, including, but not limited to, forcing Plaintiff's counsel to comb through late-dumped material, to conduct depositions on incomplete information, and to extend expert deadlines to accommodate [Union Pacific's] dilatory practices." (Filing No. 86 at pp. 12-13). At a minimum, Plaintiff asserts the Court should preclude Union Pacific "from relying on evidence untimely produced in last-minute dumps" on or after January 21, 2026. (Filing No. 86 at p. 17) (citing Fed. R. Civ. P. 37(c)(1)).

A court's power to impose sanctions based on discovery violations arise from two distinct authorities: the Federal Rules of Civil Procedure and the court's inherent authority. The Federal Rules of Civil Procedure provide for sanctions when a party fails to respond to discovery requests, when a party fails to comply with a court order regarding discovery, or when a party fails to preserve electronically stored information that should have been preserved in anticipation or conduct of litigation. *See* Fed. R. Civ. P. 37(b), (d). If the party's conduct falls outside of the conduct sanctionable pursuant to the rules, a court may still impose sanctions based upon its inherent authority to control its own judicial proceedings. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). As part of the court's inherent power to manage its own proceedings, it has the authority to sanction a party that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement. *See*

*Chambers*, 501 U.S. at 33, 44-45; *see also Wescott Agri-Prod., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012).

The Eighth Circuit has also consistently recognized that courts have, by virtue of their inherent authority, the discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012) (citation omitted). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 32 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (quoting *Chambers*, 501 U.S. at 44-45). Although "a court ordinarily should rely on the [Federal] Rules rather than [its] inherent power when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, a court may safely rely on its inherent power if in its informed discretion . . . the Rules are [not] up to the task." *Schlafly*, 970 F.3d at 936 (quoting *Chambers*, 501 U.S. at 50) (internal quotation marks omitted). The Eighth Circuit has advised that "inherent authority is a broad and powerful tool. As such, it should be used sparingly." *Sentis Grp., Inc. v. Shell Oil co.*, 559 F.3d 888, 899-900 (8th Cir. 2009) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.")). In general, "courts first should turn to specific rules tailored for the situation at hand ... to justify sanctions. Then, as an alternative basis for support or in circumstances where specific rules are insufficient, ... it may be appropriate to invoke their inherent authority." *Id.* at 900; *see also Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020).

After review, the Court finds Plaintiff's request for sanctions should be denied. The record does not support Plaintiff's characterization of defense counsel's conduct during discovery as nefarious or made in bad faith. As observed by the Court above, both sides have engaged in some level of gamesmanship during discovery, and many of counsel's issues were caused by overbroad requests for production that failed to describe documents with "reasonable particularity" as required under Rule 34. For example, as discussed during the November 6, 2025, telephonic hearing, defense counsel interpreted Plaintiff's requests for "safety audits" of the "area" to mean inspection audits of the subject track area where the incident occurred, which Union Pacific had

produced in June 2025. Union Pacific had also produced repair and maintenance records for the railcar and locomotive at issue for the 5 years prior to the accident up to a year after the incident in June 2025. Despite asserting the pavement was a "key issue," Plaintiff did not specifically request paving records and did not clarify he was seeking pavement records until just before the November 6, 2025, conference. Following Plaintiff's counsel's November 11, 2025, clarification requesting "records of an audit/inspection performed after the repaving project," defense counsel reasonably supplemented its production to include pavement project records, while continuing to ask for clarification on the request or whether Plaintiff's counsel sought anything else.

Plaintiff also points to Union Pacific's late disclosure of two carmen. Plaintiff's interrogatories asked for the identity of witnesses "who may have knowledge regarding the facts alleged in Plaintiff's Complaint[.]" (Filing No. 122-7 at p. 1). Union Pacific disclosed a number of witnesses but did not disclose the identity of the two carmen who "conducted an inspection of inbound railcars/train YNP72R 20." Union Pacific asserts there "was nothing in Plaintiff's complaint that would readily indicate Plaintiff was asking for the identity of someone who did a routine inbound inspection of the entire train before the incident, rather than the specific cars at issue," but once Plaintiff asked for that information, those two carmen were identified and deposed. (Filing No. 122 at pp. 10-11).

Plaintiff also takes issue with defense counsel's 200+ objections during Ali DeBruhl's deposition rather than making a standing objection. Defense counsel's form and foundation objections were voluminous, and in the Court's review, not always necessary or meritorious. *See, e.g.* Filing No. 122-12 at p. 6 (Q. Has Christina Conlin ever provided you training? MR. CHURCH: Form.); Filing No. 122-12 at p. 4 (Q. Does the claims department become involved if a safety issue is reported where there is no injury to a worker? MR. CHURCH: Form. Go ahead.). However, the deposition proceeded through the objections, and DeBruhl continued to answer questions after the objections; aside from the number of objections, Plaintiff points to nothing showing counsel violated the rules or otherwise engaged in sanctionable conduct. Fed. R. Civ. P. 30(c)(2) (providing an objection during a deposition must be stated concisely in a nonargumentative and nonsuggestive manner). Overzealous objections during an otherwise completed deposition does not merit sanctions.

Rule 26(e) requires parties to supplement disclosures under Rule 26(a) in a timely manner upon learning the disclosure is incomplete, which defense counsel has done through the case. Fed.

R. Civ. P. 26(e)(1). Simply put, the Court finds no legitimate basis upon which to sanction Union Pacific under Rule 37 or its inherent authority. Upon consideration,

**IT IS ORDERED:**

1. Plaintiff's Motion to Compel and for Sanctions (Filing No. 85) is denied.
2. Union Pacific's Motion to Compel (Filing No. 89) is denied.

Dated this 7th day of August, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge